# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

CHARLES MANLEY,

    *Petitioner*,

vs.

TIMOTHY FILSON, *et al.*,

    *Respondents*.

3:15-cv-00083-LRH-WGC

ORDER

This habeas matter under 28 U.S.C. § 2254 comes before the Court on, *inter alia*, a show-cause inquiry as to whether the petition is subject to dismissal as time-barred under 28 U.S.C. § 2244(d).

## *Background*

Petitioner Charles Manley challenges his adjudication and sentencing as a habitual criminal on his Nevada state conviction, pursuant to a guilty plea, of burglary while in possession of a firearm.

A judgment of conviction was filed on December 27, 2004, in No. C204662 in the state district court. (ECF No. 18-5; Exhibit 4.) No amended or corrected judgments of conviction were filed in the case thereafter.[1]

Petitioner did not file a direct appeal, and the time to do so expired on January 26, 2005.

Petitioner filed no state proceedings seeking post-conviction or other collateral review within a year of January 26, 2005. To the extent that petitioner relies upon state proceedings filed years thereafter as rendering his federal petition timely, the Court discusses those proceedings *infra*.

---

[1] In addition to the materials on file, the Court takes judicial notice of the online docket records of the state district court. *E.g., Harris v. County of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012). The online docket record may be accessed from: https://www.clarkcountycourts.us/Anonymous/default.aspx

The federal petition in this matter was dispatched for filing approximately a decade later, on or after January 25, 2015.

In the single ground presented in the federal petition, Manley alleges that he was denied due process in violation of the Fifth and Fourteenth Amendments because he allegedly was improperly adjudicated and sentenced as a habitual criminal due to alleged circumstances and deficiencies existing as of the date of the September 30, 2004, sentencing proceeding. (See ECF No. 7, at 4-6.)[2]

### *Discussion*

#### *Base Calculation of the Federal Limitation Period*

Under 28 U.S.C. § 2244(d)(1)(A), the federal one-year limitation period, unless otherwise tolled or subject to delayed accrual, begins running after "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such direct review."

In the present case, the judgment of conviction was filed on December 27, 2004; and the time period to appeal the judgment expired on January 26, 2005. The federal one-year limitation period therefore expired one year later on January 26, 2006, absent a basis for tolling or delayed accrual. No state proceedings for post-conviction or other collateral review were filed prior to that date that would give rise to statutory tolling under 28 U.S.C. § 2244(d)(2). The federal petition was not constructively filed until on or about January 25, 2015, nine years after the federal limitation period putatively had expired. The federal petition therefore is untimely on its face, absent tolling or delayed accrual.

#### *Alleged Alternative Accrual Date*

Petitioner urges, however, that the federal one-year limitation period did not begin to run under § 2244(d)(1)(A) until after the October 22, 2014, issuance of the remittitur concluding appellate proceedings on a motion to modify sentence that he filed on November 21, 2013. (ECF Nos. 18-17 through 18-25, Exhibits 16-24; ECF No. 10, at 7.) Petitioner maintains that he can file a motion to modify sentence at any time under state law and that such a motion constitutes a "direct attack" of a conviction for purposes of § 2244(d)(1)(A) rather than a proceeding for collateral review.

---

[2]The initial page citations herein are to the page number in the electronic header generated by CM/ECF rather than to any internal page numbering in the original document. A parallel cite to certain state court record exhibits is provided for the *pro se* petitioner's reference.

1  Petitioner is incorrect. Petitioner's December 27, 2004, judgment of conviction became final
2  by the expiration of the time for seeking direct review when the time to file a direct appeal expired on
3  January 26, 2005. The federal limitation period began running under § 2244(d)(1)(A) after that date;
4  and absent a basis for tolling during the ensuing year, expired one year later on January 26, 2006. *E.g.,*
5  *Randle v. Crawford*, 604 F.3d 1047, 1050 & 1054-57 (9th Cir. 2009). The filing of a motion to modify
6  sentence years after the time for seeking direct review already had expired as to the judgment is
7  irrelevant, as is whether the state court motion was timely under state procedural law.

8  The two Ninth Circuit decisions relied upon by petitioner do not establish to the contrary.

9  In *Collier v. Bayer*, 408 F.3d 1279 (9th Cir. 2005), the Court of Appeals made no holding
10 regarding the application of the federal limitation period in 28 U.S.C. § 2244(d). *Collier* instead
11 concerned application of the procedural default doctrine based upon the Nevada state courts' application
12 of the state procedural bar in N.R.S. 34.726(1), which establishes a one-year state limitations period for
13 a timely state post-conviction petition.

14 *Collier* held, *inter alia*, that a state law rule that a motion to correct illegal sentence did not
15 constitute a tolling "appeal . . . from the judgment" under N.R.S. 34.726(1) did not constitute a clearly
16 established state law rule at the relevant time for purposes of the federal procedural default doctrine.
17 The panel held that the rule was not clearly established at the relevant time because a state supreme
18 court decision holding that the tolling provisions of N.R.S. 34.726(1) applied only to a timely direct
19 appeal was not decided until 1998, after Collier had filed his motion in 1997. *See* 408 F.3d at 1286-88.
20 Even if this holding had any relevance to the application of the accrual rule in § 2244(d)(1)(A), it cannot
21 benefit Manley. He filed his motion to modify sentence in 2013, fifteen years after the Supreme Court
22 of Nevada clearly had held that only a timely direct appeal could constitute an "appeal . . . from the
23 judgment" under N.R.S. 34.726(1). As *Collier* notes, after the state supreme court's 1998 holding, "the
24 confusion present during Collier's appeal does not exist." 408 F.3d at 1288. This holding in *Collier*
25 thus clearly cannot benefit Manley.

26 Petitioner further relies upon a footnote in *Collier* referring to state court authority suggesting
27 that "[m]otions to correct an illegal sentence . . . are not collateral attacks" under Nevada state law. 408

F.3d at 1282 n.2.[3] In the cited state case, the state supreme court stated that motions to modify sentence "are direct attacks on the decision itself, rather than collateral, post-conviction attacks" for purposes of determining whether a particular state statute authorized an appeal from an order denying such a motion. *See Passanisi v. State*, 108 Nev. 318, 831 P.2d 1371, 1372-73 (1992), *overruled on related grounds by, Harris v. State*, 329 P.3d 619, 627 (Nev. 2014).

State court characterizations of a proceeding as a "direct attack" or "collateral attack" for purposes of particular consequences under various state procedural rules are not necessarily determinative of whether the proceeding constitutes "direct review" for purposes of § 2244(d)(1)(A), which is a question of federal law. State law was material to the outcome in *Collier* because application of the procedural default doctrine turned upon whether the state law procedural rule was clearly established and thus adequate. *See generally Collier*, 408 F.3d at 1283-84. In contrast, nothing in *Collier* establishes that a motion to modify sentence filed years after the expiration of the time to file a direct appeal constitutes "direct review" for purposes of § 2244(d)(1)(A). *Cf. Randle*, 604 F.3d at 1054-55 (declining to construe an untimely appeal as a continuation of direct review under § 2244(d)(1)(A) because such a construction would allow manipulation of the date of finality of judgment indefinitely and essentially would eviscerate the federal statute of limitations).

*Collier* thus does not support petitioner's position that a motion to modify sentence constitutes direct review with regard to finality of judgment for purposes of § 2244(d)(1)(A).

Petitioner further relies upon *Summers v. Schriro*, 481 F.3d 710 (9th Cir. 2007). In *Summers*, under Arizona law, a defendant who pled guilty waived her right to a conventional direct appeal but retained the right to seek review of the conviction in an "of-right proceeding" under a state criminal procedure rule. Under Arizona case law, such a proceeding constituted "the functional equivalent of a direct appeal." 481 F.3d at 713 (internal quotation marks and citation omitted). The Ninth Circuit accordingly held that the of-right proceeding – which took the place of a direct appeal opportunity that the defendant otherwise did not have – constituted "direct review" for purposes of § 2244(d)(1)(A).

---

[3]Petitioner cites in error to the note being at page 1300, perhaps referring to an online copy of the decision where the footnotes all are set forth at the end of the document. Page 1300 is at the end of the dissent, not the majority opinion; and the page has no footnotes.

-4-

In contrast, no Nevada case has held that a motion to modify sentence is the functional equivalent specifically of a direct appeal, and the motion does not take the place of a direct appeal opportunity that the defendant otherwise does not have.[4] In the present case, for example, Manley could have pursued a direct appeal, but he did not. Accordingly, nothing in *Summers* establishes that a Nevada motion to modify sentence filed years after the expiration of the time to file a direct appeal constitutes "direct review" for purposes of § 2244(d)(1)(A). *Summers* simply is inapposite.

Petitioner presents no further argument seeking to establish a basis for either tolling or delayed accrual.

The federal petition therefore is untimely by nine years.

***Alleged Actual Innocence of the Habitual Criminal Adjudication***

Petitioner seeks in the alternative to overcome the untimeliness of the petition on the basis of actual innocence of the habitual criminal adjudication and sentence.

Petitioner maintains that he is actually innocent of the habitual criminal adjudication and sentence because "the Court erroneously believed that his criminal record was so heavy that the Judge would 'break a toe' if he droped [sic] it on his foot." ( ECF No. 10, at 4-5; see also ECF No. 7, at 4.) He asserts that "the issue is what the Judge would have done had it known that at least four of the prior convictions it relied on were improper." (ECF No. 10, at 4-5; see also ECF No. 7 at 4.) He challenges a number of the prior convictions on specific grounds discussed further *infra*.

Generally, in order to avoid application of the one-year limitation period based upon a claim of actual innocence, a petitioner must come forward with new reliable evidence tending to establish actual factual innocence, *i.e.*, tending to establish that no reasonable trier of fact would have found him guilty beyond a reasonable doubt. *See McQuiggin v. Perkins*, 133 S.Ct. 1924 (2013); *House v. Bell*, 547 U.S. 518 (2006); *Bousley v. United States*, 523 U.S. 614 (1998); *Lee v. Lampert,* 653 F.3d 929 (9th Cir. 2011)(*en banc*). In this regard, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623.

---

[4]Moreover, as discussed above with regard to *Collier*, the state supreme court held in 1998 that a motion to correct an illegal sentence was not an appeal for purposes of tolling of the state limitations period.

Assuming *arguendo* that a petitioner may overcome the untimeliness of a petition by showing actual innocence of a noncapital sentencing enhancement, petitioner has failed to come forward with new reliable evidence tending to demonstrate actual factual innocence of the habitual criminal adjudication.

Petitioner was adjudicated and sentenced as a habitual criminal, pursuant to the guilty plea agreement, under Nevada's "large" habitual criminal statute, N.R.S. 207.010(1)(b). (See ECF Nos. 18-3 & 18-5; Exhibits 2 and 4.)

At the time of petitioner's August 20, 2004, offense, the statute in pertinent part authorized "large" habitual criminal treatment for a person convicted of a felony in Nevada "who has previously been three times convicted, whether in this State or elsewhere, of any crime which under the laws of the situs of the crime or of this State would amount to a felony." N.R.S. 207.010(1)(b), as amended through 1997 Laws, c. 314, § 8, at 1184.

Accordingly, in order to establish *arguendo* actual factual innocence of the habitual criminal adjudication, Manley would have to present new reliable evidence establishing that he in fact has not "been three times convicted, whether in this State or elsewhere, of any crime which under the laws of the situs of the crime or of this State would amount to a felony."

In a written guilty plea agreement executed on September 30, 2004, Manley agreed to plead guilty to "COUNT – BURGLARY WHILE IN POSSESSION OF A FIREARM (Large Habitual), as more fully alleged in the charging document . . . ." The charging document included a list setting forth eight prior convictions. The written plea agreement further stated that "[b]oth the State and Defendant stipulate and agree that Defendant should receive a sentenced [sic] of TEN (10) to LIFE under the "large habitual sentencing enhancements, NRS 207.0101(b)." (ECF No. 18-2; Exhibit 1. ECF No. 18-3; Exhibit 2.)

During the September 30, 2004, plea colloquy, Manley acknowledged that he had read and signed the plea agreement. Defense counsel stated that the plea agreement was being filed in open court, and the agreement carries a file stamp reflecting that it was filed in open court. Defense counsel further stated that the State and the defendant had stipulated to a ten to life sentence under the large habitual sentencing guidelines. (ECF No. 18-3, Exhibit 2. ECF No. 18-4, at 3-4; Exhibit 3, at 2-3.)

During the proceeding, the prosecutor stated: "I'd like to file some certified judgements [sic] of conviction." The state district court replied: "Go ahead" and "I'm familiar with his record." The court thereupon continued speaking about petitioner's record. (ECF No. 18-4, at 5; Exhibit 3, at 4.)

On federal habeas review, this Court directed respondents to file copies of the prior judgments of conviction filed at petitioner's sentencing. (ECF No. 20.)

Petitioner thereafter questioned the authenticity of the materials filed by respondents (ECF No. 24-1) and raised questions about the accompanying state court clerk's office form filed with the supplemental exhibit. (See ECF No. 25.)

This Court thereupon directed respondents to file certified copies of the judgments of conviction filed at the September 30, 2004, sentencing along with affidavits or declarations responding to the points raised by petitioner. (ECF No. 26.)

The declarations submitted in response collectively reflect that: (1) the court clerk assigned to the matter on September 30, 2004, stamped the guilty plea agreement "filed in open court" at that time; (2) no exhibits were received and filed at the September 30, 2004, hearing; (3) a different court clerk at later June 15, 2009, and July 8, 2009, proceedings regarding petitioner's requests for the prior judgments of conviction searched the then hard copy file and did not find them for the June 15, 2009, proceeding, leading to the matter being continued; (4) at the later July 8, 2009, followup hearing, the court noted that it had received certified judgments of conviction and mailed them to petitioner; (5) the court clerk "do[es] not know where they came from;" (6) the court directed her at that time to file them as an exhibit "on that day;" (7) while the exhibit description in the vault exhibit form perhaps should have referred to the petitioner's then-current proceedings, the court clerk referred on the form to the date of the "hearing of the sentencing instead because I was relating them to the hearing date the defendant requested;" (8) during the second court clerk's research, the court clerk from the September 30, 2004, sentencing informed her that the parties used the same presentence investigation report and the same prior judgments of conviction that had been used in petitioner's case in No. C197525; (9) the evidence vault staff located previously lodged prior judgments of conviction for No. C197525 in the clerk's evidence vault; and (10) respondents' counsel previously had filed the prior judgments of conviction in this matter that had been provided to his staff in response to a request for the prior judgments of

conviction for this case, *i.e.*, No. C204662 in the state district court. (See ECF Nos. 29-1, 29-2, 29-4 & 30-1; Exhibits 26, 27, 29 & 30.)[5]

Respondents additionally filed a certified copy of the prior judgments of conviction provided by the state court clerk. The Court notes that the certified copy stamps on the copies of the Nevada convictions – which are in blue ink in the original exhibit filed manually in the federal record – are electronic file-stamp dated variously on September 3, 2004, September 9, 2004, and September 22, 2004, on the front and/or the back of the papers. The copies of three Colorado convictions also carry certified copy stamps by that court's clerk that are electronic file-stamped dated on September 9, 2004, with the different colored ink used in the stamps and signatures clearly reflected in the manually-filed exhibit, which includes the raised seal of the local Nevada state district court clerk on its last page. Those September dates would have been after the May 5, 2004, sentencing in No. C197525 but before the September 30, 2004, sentencing in No. C204662. It thus would appear that the exhibit package on file in this Court was prepared for No. C204662, not No. C197525, the court clerk's assertion in the recently-filed declarations notwithstanding. (See ECF No. 29-3; Exhibit 28, together with the corresponding exhibit filed manually with ECF No. 27.)[6]

In his reply, petitioner declares that, *inter alia*, the written plea agreement was not filed in open court, he never stipulated or admitted to the prior judgments of conviction "in open court," and the prior judgments of conviction filed in No. C197525 were not in fact used in No. C204662. (ECF No. 31.)

The pertinent issue at this juncture is not whether there was some procedural irregularity with petitioner's habitual criminal adjudication. That is, the pertinent issue is not, *inter alia*, whether the

---

[5]The online docket record for No. C197525 reflects that petitioner was sentenced in that matter on May 5, 2004, and that certified copies of prior judgments of conviction were provided and filed as an exhibit in connection with adjudication of petitioner as a habitual criminal under the "small" Nevada habitual criminal statute.

[6]In the electronically-filed copy of the exhibit, see, e.g., ECF No. 29-3, at 24, 43, 57 & 93. The certified copy stamps are much clearer in the manually-filed original exhibit. The print date shown for the minutes for the last Nevada judgment of conviction in the packet also is September 22, 2004. (See *id.*, at 101.) Additionally, the prior inmate materials forwarded by the Colorado offenders records custodian similarly carry certification stamps from September 1, 2004. (See *id.*, at 3.) The only reasonable conclusion to draw from the exhibit, particularly the manually-filed original exhibit, is that the packet was prepared for the September 30, 2004, sentencing in No. C204662, not the earlier May 5, 2004, proceeding in No. C197525. The prosecutor clearly referenced a packet of prior convictions at the September 30,2004, proceeding that he then was prepared to file, but that packet for some reason apparently did not end up in the record. (ECF No. 18-4, at 5; Exhibit 3, at 4.)

presiding judge made the appropriate findings, whether an exhibit with the prior judgments of conviction was properly filed at the September 30, 2004, sentencing, or whether petitioner personally admitted to the prior judgments of conviction "in open court" rather than in the written plea agreement.

The pertinent issue instead is whether petitioner has demonstrated that he is actually factually innocent of the habitual criminal adjudication, *i.e.*, that he in fact was not previously three times convicted of any crime that was a felony under either Nevada law or the laws of the situs of the crime. Petitioner can overcome the untimeliness of the federal petition only upon a showing of actual factual innocence. Showing instead some alleged procedural irregularity or other alleged legal insufficiency in the habitual criminal adjudication proceedings does not establish such actual factual innocence of the habitual criminal sentencing enhancement. To do that, again, petitioner must show that he in fact was not previously three times convicted of any crime that was a felony under either Nevada law or the laws of the situs of the crime.

Petitioner cannot make that required showing here, after having been given an opportunity to reply to respondents' filing and exhibits. The Court's most recent order afforded the opportunity also to present any additional arguments that he may have as to actual innocence. (ECF No. 26, at 3.)

Respondents present eight convictions from prior to the time of petitioner's adjudication as a habitual criminal in No. C204662, including four Colorado convictions and four Nevada convictions.

Respondents present, in particular, copies of the following convictions, which the Court lists in chronological order:

    (1)    a conviction on or about July 12, 1990, for menacing, in No. 89CR2445 in El Paso County, Colorado;

    (2)    a conviction on or about July 20, 1990, for giving false information to a pawn broker, in No. 90CR24 in Fremont County, Colorado;

    (3)    a conviction on or about September 14, 1992, for theft, in No. 92CR583 in El Paso County, Colorado;

    (4)    a conviction on or about August 11, 1993, for theft, in No. 91CR2789 in El Paso County, Colorado;

| | | |
|---|---|---|
| 1 | (5) | a conviction on or about August 28, 1995, for possession of a controlled substance, in No. C128842 in Clark County, Nevada; |
| | (6) | a conviction on or about June 22, 1998, for possession of a stolen vehicle, in No. C149044 in Clark County, Nevada; |
| | (7) | a conviction on or about June 1, 2000, for possession of a stolen vehicle, in No. C165933 in Clark County, Nevada; and |
| | (8) | a conviction on or about June 28, 2000, for possession of a controlled substance, in No. C166139 in Clark County, Nevada. |

(ECF No. 29-3; Exhibit 28. See also the exhibit filed manually with ECF No. 27.)

Petitioner contends, first, that the two 1990 Colorado convictions following upon 1989 and 1990 arrests could not be properly considered because the offenses would not constitute a felony in Nevada. He relies upon the 1963 decision in *Carter v. State*, 79 Nev. 89, 378 P.2d 876 (1963),[7] as support for the proposition that for a conviction from another state to be considered, the acts in question must constitute a felony under Nevada law. (ECF No. 7, at 4-5 & 15-16.)

Petitioner's reliance upon *Carter* is misplaced. It is true that – in 1963 – the then-pertinent portion of the statute referred only to "any crime which under the laws of this State would amount to a felony." N.R.S. 207.010(2), as amended through 1961 Laws, ch. 267, § 1, at 446. However, in 1965 the then-pertinent portion of the statute was amended to include the current language referring to "any crime which under the laws *of the situs of the crime* or of this State would amount to a felony." N.R.S. 207.010(2), as amended by 1965 Laws, ch. 136, § 1, at 250. Manley's argument thus is 53 years too late and is without merit. The two 1990 convictions were for felonies in Colorado. (See ECF No. 29-3, at 17-22 & 55-64; Exhibit 28.) The two convictions thus properly could be considered as a basis for

---

[7]Petitioner cites the decision as a 1986 decision, but *Carter* was decided 55 years ago in 1963.

a habitual criminal adjudication under the then-applicable version of N.R.S. 207.010(1)(b) in connection with No. C204662.

Second, petitioner contends that a 1986 Arizona conviction for attempted theft could not be properly considered because the conviction instead was a misdemeanor conviction in Arizona. (ECF No. 7, at 16.) This argument misses the mark because no Arizona conviction, of any description, was included in the exhibit before this Court that was prepared in September 2004 prior to petitioner's sentencing. (See ECF No. 29-3; Exhibit 28.)[8]

Third, petitioner contends that two Nevada convictions from 2000, one for possession of a controlled substance and another for possession of a stolen vehicle, instead should have been considered as only one conviction. He maintains that he entered into a plea agreement on April 18, 2000, that consolidated the two cases together. He urges that the two convictions accordingly arose from the same act, occurrence or transaction and therefore could be considered as only one conviction, relying upon *Rezin v. State*, 95 Nev. 461, 596 P.2d 226 (1979). (ECF No. 7, at 4-5 & 16-17.)

Petitioner's reliance upon *Rezin* also is misplaced. In *Rezin*, the defendant previously had been convicted of rape and robbery in a circumstance where the offenses factually grew out of the same act, transaction or occurrence and were prosecuted in the same two-count indictment. 596 P.2d at 226.

In contrast, Manley: (1) was charged in No. C166139 with having committed the crime of possession of a controlled substance on January 13, 2000; and (2) was charged in No. C165933 with possession of a stolen vehicle at a different time on February 10, 2000. He signed separate guilty plea agreements in each case, on different dates. While each guilty plea agreement referenced his agreement to plead guilty also in the other case, he executed two separate plea agreements in the two separate cases and entered two pleas separately in court in each respective case on different dates. He thereafter was sentenced separately in the two cases on different dates, and a separate judgment of conviction was entered separately in each respective case also on different dates. Nothing in the record reflects that the

---

[8] A 1986 Arizona conviction was referenced in the charging document. (ECF No. 18-2, at 5; Exhibit 1, at 4.) The issue at this point, again, is whether petitioner can demonstrate actual factual innocence of the habitual criminal adjudication. Any notice issues involved in the charging document referring to an Arizona conviction rather than another conviction would go at best to procedural error and legal sufficiency, not actual factual innocence of the habitual criminal enhancement.

-11-

offenses arose from the same act, transaction or occurrence – being charges for possession of a controlled substance on January 13, 2000, and for possession of a stolen vehicle instead on February 10, 2000. Nor were the offenses ever charged together. Nor were the two separate cases ever consolidated together. Rather, Manley simply entered pleas in two separate cases that had been pending at the same time. (See ECF No. 29-3, at 30-40 & 92-102.) *Rezin* thus is inapposite.

It is subject to substantial question – even if a habeas petitioner otherwise *arguendo* may be able to establish actual innocence of a habitual criminal adjudication – whether the foregoing arguments in any sense present new reliable evidence of actual factual innocence of the habitual criminal adjudication as opposed to arguments going merely to, at best, legal sufficiency.

In all events, however, petitioner had eight prior convictions in a situation where only three were required for adjudication as a habitual criminal under N.R.S. 207.010(1)(b). Petitioner's arguments, even on their face, would not have reduced the number of properly-available convictions below the minimum three prior convictions required. However, given that petitioner's arguments do not establish that even a single conviction of the eight convictions in fact was improper under the statute, it is abundantly clear that he cannot establish actual factual innocence of the habitual criminal sentencing enhancement.

Petitioner accordingly has failed to present a viable basis for overcoming the untimeliness of the claims presented in the petition, which was filed nine years after the expiration of the federal limitation period.[9]

IT THEREFORE IS ORDERED that the petition shall be DISMISSED with prejudice as untimely.

IT FURTHER IS ORDERED that respondents' motion (ECF No. 21) for an extension of time is GRANTED *nunc pro tunc* in connection with the previously-filed response (ECF Nos. 23 & 24).

---

[9]Petitioner referred in his initial show-cause response to "requested discovery." (ECF No. 10, at 5.) There are no self-operative discovery requests in federal habeas proceedings, and a motion for leave to conduct discovery filed earlier in this action was denied. (See ECF Nos. 5 & 6.) In all events, Manley maintained that the purported requested discovery would prove his actual innocence of the habitual criminal adjudication, in connection with the arguments that he made in this regard in his pleading and show-cause response. The filing of a copy of the convictions that were available to the State at the time of his habitual criminal adjudication fully developed the federal record with respect to the actual innocence arguments made by petitioner, which challenged whether certain convictions could be relied upon.

1    IT FURTHER IS ORDERED that petitioner's motion (ECF No. 25) to clarify and authenticate supplemental exhibits is GRANTED IN PART and DENIED IN PART, with the motion being granted to the extent to which the Court's February 9, 2018, order (ECF No. 26) directed additional filings and otherwise is denied to any extent that the motion seeks further relief beyond that ordered.

IT FURTHER IS ORDERED that a certificate of appealability is DENIED, as reasonable jurists would not find the district court's dismissal of the petition as untimely to be debatable or incorrect, for the reasons discussed herein. At bottom, petitioner has not presented a viable argument for overcoming the untimeliness of the federal petition. His actual-innocence argument as to the habitual criminal adjudication in particular is without merit, as the record reflects that petitioner had eight prior qualifying convictions at the relevant time where the governing statute required only three. Any procedural irregularities in the habitual criminal proceeding notwithstanding, petitioner at this point must demonstrate actual factual innocence, not merely technical legal insufficiency, to overcome the federal time-bar.

The Clerk of Court shall enter final judgment accordingly, in favor of respondents and against petitioner, dismissing this action with prejudice.

DATED this 29th day of March, 2018.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE